IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-03448-SBP

L.C.,[1]

    Plaintiff,

v.

LELAND DUDEK,[2] Commissioner of Social Security,

    Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

**Susan Prose, United States Magistrate Judge**

    Plaintiff L.C. brings this action under Title II, 42 U.S.C. §§ 401 *et seq.*, of the Social Security Act (the "Act") for review of the Commissioner of Social Security's (the "Commissioner") final administrative decision denying her claim for disability insurance benefits ("DIB"). The court has carefully considered the administrative record, ECF No. 7 ("AR")[3], Plaintiff's brief, ECF No. 8 ("Brief"), the Commissioner's response, ECF No. 10 ("Response"), Plaintiff's reply, ECF No. 11 ("Reply"), and the applicable law. No hearing is

---

[1] Pursuant to D.C.COLO.LAPR 5.2(b), "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] Leland Dudek is now the acting Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See* 42 U.S.C. § 405(g) (an action survives regardless of any change in the person occupying the office of the Commissioner of Social Security).

[3] The court uses "ECF No. ---" to refer to specific docket entries in CM/ECF and uses "AR: ---" to refer to documents in the administrative record.

1

necessary.

For the reasons below, the court **REVERSES** the Commissioner's decision and **REMANDS** this case for further proceedings consistent with this Memorandum Opinion and Order.

## BACKGROUND

Plaintiff applied for disability insurance benefits in 2020, alleging disability as of April 20, 2018, due to left elbow issues, bilateral arm weakness, rheumatoid arthritis affecting her feet and hands, a bilateral mastectomy, left knee issues, and migraine headaches. AR: 41-42, 294. Plaintiff's claim was denied initially and again on reconsideration. AR: 76. She then sought a hearing, which was held before the ALJ on April 25, 2023. AR: 76. The ALJ issued an unfavorable decision, AR: 76-92, and the Appeals Council denied review, AR: 76, rendering the ALJ's decision as the final decision of the Commissioner.

## DIB FRAMEWORK

A person is disabled within the meaning of the Act "only if his physical and/or mental impairments preclude him from performing both his previous work and any other 'substantial gainful work which exists in the national economy.'" *Wilson v. Astrue*, No. 10-cv-00675-REB, 2011 WL 97234, at *1 (D. Colo. Jan. 12, 2011) (quoting 42 U.S.C. § 423(d)(2)). "However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months." *Brandon v. Colvin*, 129 F. Supp. 3d 1231, 1232 (D. Colo. 2015) (citing *Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995)). "[F]inding that a

claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time." *Fritz v. Colvin*, No. 15-cv-00230-JLK, 2017 WL 219327, at *8 (D. Colo. Jan. 18, 2017) (emphasis in original) (quoting *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994)).

The Commissioner is required to follow a "five-step sequential evaluation process" which guides the determination of whether an adult claimant meets the definition of disabled under the Social Security Act. 20 C.F.R. § 404.1520(a)(i)-(v) (DIB evaluation of disability of adults). If it can determine if the claimant is disabled or not at a step, the Commissioner makes the determination and does not continue to the next step. § 404.1520(a)(4). However, if that determination cannot be made, the Commissioner proceeds to the next step. *Id.*

Step one asks whether the claimant is presently engaged in "substantial gainful activity." § 404.1520(a)(4)(i). If so, the claimant is "not disabled regardless of [ ] medical condition, . . . age, education, and work experience." §§ 404.1520(a)(4)(i), 404.1520(b).

Step two assesses whether the claimant has a medically severe impairment or combination of impairments under § 404.1509. *See* § 404.1520(a)(4)(ii). If the claimant does not show "any impairment or combination of impairments which significantly limits [their] physical or mental ability to do basic work activities," the claimant is "not disabled" regardless of "age, education, and work experience." § 404.1520(c).

Step three tests whether the claimant's "impairment(s) meets or equals" a listed impairment and "meets the duration requirement[.]" § 404.1520(a)(4)(iii). If so, the claimant is

disabled regardless of "age, education, and work experience." § 404.1520(d). If not, the Commissioner analyzes the claimant's residual functional capacity, or "RFC," which "is the most [the claimant] can still do despite [their] limitations." §§ 404.1520(e), 404.1545(a)(1).

Step four considers whether the claimant "can still do [their] past relevant work" based on their RFC. §§ 404.1520(a)(4)(iv), 404.1520(e). To be disabled, the claimant's "impairment(s) must prevent [them] from doing [their] past relevant work." § 404.1520(f). For guidance on this determination, "ALJs often seek the views of 'vocational experts.'" *See Biestek v. Berryhill*, 587 U.S. 97, 100 (2019) (citing §§ 404.1566(e), 416.966(e)). If the claimant's "severe impairment" prevents them from doing their "past relevant work" or they have no "past relevant work," the analysis continues to the final step. § 404.1520(g).

Lastly, step five considers the RFC assessment and the claimant's vocational factors—"age, education, and work experience." §§ 404.1520(a)(4)(v), 404.1520(g)(1). Any other work the claimant "can adjust to must exist in significant numbers in the national economy (either in the region where [they] live or in several regions in the country)." § 404.1560(c)(1). The Commissioner is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [their] residual functional capacity and vocational factors." § 404.1560(c)(2). If the claimant "can make an adjustment to other work," they are "not disabled." § 404.1520(g).

The claimant has the burden of proof at steps one through four. The Commissioner bears the burden of proof at step five to prove there is other work the claimant can perform. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The burden-shifting at step five, however, does not shift the plaintiff's burden to prove his RFC. § 404.1560(c)(2) ("We are not responsible for

providing additional evidence about your residual functional capacity because we will use the same residual functional capacity assessment that we used to determine if you can do your past relevant work.").

## ALJ'S DECISION

At step one, the ALJ found that Plaintiff was insured for DIB through September 30, 2019, AR: 78, and had not engaged in substantial gainful activity since her alleged disability onset date of April 20, 2018. AR: 78. At step two, the ALJ concluded that Plaintiff had the following severe impairments: rheumatoid arthritis; left elbow arthroscopy; arthropathy of the right foot; and status-post bilateral mastectomy and reconstruction. AR: 78. The ALJ also found that the following impairments were non-severe and did not cause more than mild limitations in work-related functioning: gastric ulcer, biliary dyskinesia, osteopenia, gastroesophageal reflux disease (GERD), and obesity.[4] AR: 78-79. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listing. AR: 80-82.

The ALJ then proceeded to assess Plaintiff's RFC and found that Plaintiff could perform a range of light work with the following additional restrictions:

> she can never climb ladders, ropes, or scaffolds but can occasionally climb ramps or stairs, and kneel. She can frequently stoop and crouch but never crawl. The claimant can occasionally reach overhead with the left upper extremity.

AR: 82. At steps four and five, the ALJ found that Plaintiff was unable to perform any relevant past work, AR: 89-90, but could perform other jobs that existed in significant numbers in the

---

[4] The ALJ did not address whether Plaintiff's migraine headaches were a severe impairment or not. *See* AR: 78-79.

5

national economy, and thus was not disabled. AR: 90-91.

## STANDARD OF REVIEW

In reviewing the Commissioner's decision, the court "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014). "The phrase 'substantial evidence' is a 'term of art,' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek*, 587 U.S. at 102 (quoting *T-Mobile South, LLC v. Roswell*, 574 U.S. 293, 301 (2015)). In applying the substantial-evidence standard,

> a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contacts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Id.* at 102-103 (cleaned up); *see also Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) ("Substantial evidence requires more than a scintilla but less than a preponderance.") (quoting *U.S. Cellular Tel., L.L.C., v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003)). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Zoltanski*, 372 F.3d at 1200 (quoting *U.S. Cellular*, 340 F.3d at 1133).

The court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Knight*, 756 F.3d at 1175 (citation omitted); *see also Zoltanski*, 372 F.3d at 1200 (the court may not displace the Commissioner's choice between two fairly conflicting views, even if

the court would have made a different choice if the matter had been before it de novo). Even so, this court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)). "A reviewing court must uphold even a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Garland v. Dai*, 593 U.S. 357, 369 (2021) (cleaned up).

In addition, this court's review is guided by the harmless error doctrine, which the Tenth Circuit Court of Appeals applies to social security disability cases. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). A court "may apply harmless error in the social security context 'where, based on material the ALJ did at least consider (just not properly), [it] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.'" *Armijo v. Astrue*, 385 F. App'x 789, 792 (10th Cir. 2010) (quoting *Allen*, 357 F.3d at 1145).

## ANALYSIS

Plaintiff challenges the ALJ's decision on several grounds. She first argues that the ALJ failed to address her migraines. Brief at 11-15. Second, Plaintiff maintains that the ALJ should have afforded more weight to the opinion of Plaintiff's orthopedic surgeon, Dr. Steven Seiler. *Id.* at 16-18. Third, Plaintiff asserts that the ALJ's finding that Plaintiff was capable of standing or walking for at least six hours a day lacked the requisite support.[5] *Id.* at 18. Finally, Plaintiff

---

[5] In other words, Plaintiff contests the ALJ's finding that Plaintiff could meet the standing and walking requirements of light work. *See* SSR 83-10, 1983 WL 31251, at *6 ("[T]he full range of

7

argues that the ALJ erred when she discredited Plaintiff's subjective statements. *Id.* at 19-23. The court will take each in turn.

I.      **Plaintiff's Migraines**

Plaintiff was diagnosed with migraines and prescribed medications as treatment for her headaches prior to her last insured date. AR: 398, 400, 506, 639, 863-64. Plaintiff highlights, too, that the state agency medical consultants listed Plaintiff's migraines as a medically determinable impairment. AR: 61, 65. Although the ALJ acknowledged that "[Plaintiff] has alleged disability due to . . . migraines," AR: 83, the ALJ's decision did not address Plaintiff's migraines at step two to determine whether her migraines were a severe impairment, *see* AR: 78-80; at step three when considering whether Plaintiff's impairments, alone or in combination, equaled a listing, *see* AR: 80-82; or when calculating Plaintiff's RFC, *see* AR: 82-89.

The Commissioner does not dispute that the ALJ did not discuss Plaintiff's migraines in her decision; however, the Commissioner argues that Plaintiff has not shown that this omission requires remand. Response at 7 ("The Commissioner acknowledges the ALJ discussed Plaintiff['s] migraine headaches only one time when the ALJ found Plaintiff alleged disability due to several impairments, including migraine headaches. This issue presents a close call because Plaintiff has not met her burden of establishing work-related limitations that exceeded the ALJ's RFC or that the decision lacked substantial evidentiary support.") (citation omitted). Thus, the question before the court is whether the ALJ's failure to address Plaintiff's migraines warrants remand or whether the court can nevertheless sustain the ALJ's findings.

---

light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.").

8

The court respectfully concludes that remand is necessary, and the Commissioner's arguments urging the court to uphold the ALJ's decision demonstrate why. The Commissioner begins by running through the medical evidence regarding Plaintiff's migraines in an effort to show that the migraines were relatively insignificant such that they would not have materially affected the ALJ's decision had they been addressed. Response at 7-9. The Commissioner then suggests that the ALJ *did* consider Plaintiff's migraines—notwithstanding her failure to mention them more than once—because the ALJ stated that she "considered all of Plaintiff's [medically determinable impairments]." *Id.* at 9. The Commissioner also maintains that the ALJ indirectly addressed Plaintiff's migraines when she found persuasive the opinions of Dr. Foster, who opined that migraines did not significantly limit Plaintiff's work-related abilities. *Id.*

The problem, though, is that the ALJ did not articulate this reasoning—or, for that matter, any reasoning—with respect to Plaintiff's migraines. *See, e.g.*, *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (instructing that an ALJ's decision must be "evaluated based solely on the reasons stated in the decision.") (citation omitted). In *Deardorff v. Commissioner, SSA*, the Tenth Circuit reviewed an ALJ's decision where, like here, the claimant cited migraines as a basis for disability, but the ALJ "did not acknowledge or discuss any of the evidence related to [his] headaches." 762 F. App'x 484, 489 (10th Cir. 2019). The Commissioner defended the ALJ's decision by arguing that "[m]edical providers believed that [claimant's] headaches were not migraine headaches but instead related to his neck condition, which the ALJ extensively discussed[.]" *Id.* (citation and internal quotation marks omitted). The Tenth Circuit rejected this argument as a "post hoc rationale," observing that the ALJ "never made such a finding or statement." *Id.* (citing *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) ("The

9

magistrate judge's (and appellee's) post hoc rationale is improper because it usurps the agency's function of weighing and balancing the evidence in the first instance. Judicial review is limited to the reasons stated in the ALJ's decision[.]") (citation omitted)).

The facts of *Deardorff* are on all fours with those here. As the Commissioner concedes, the ALJ did not acknowledge or discuss the evidence regarding Plaintiff's migraines, nor did she set forth how she considered Plaintiff's migraines or the reasons why she reached the conclusion that she did. Rather, it seems that the ALJ simply failed to incorporate Plaintiff's migraines into her analysis. *See Spicer v. Barnhart*, 64 F. App'x 173, 177 (10th Cir. 2003) (remanding because although "the mere diagnosis of an impairment does not necessarily compel a finding of disability, the regulations do require the ALJ to at least consider a demonstrated impairment throughout the disability determination process. In the present case, the ALJ's failure to even mention plaintiff's osteoarthritis leads us to doubt that he formed any conclusion at all regarding plaintiff's hands") (citations omitted).

Therefore, the court concludes that this case must be remanded back to the Commissioner to consider Plaintiff's migraines. To the extent Plaintiff argues that the ALJ erred by failing to consider her migraines at subsequent steps in her decision—such as at steps three and five and when calculating Plaintiff's RFC—the court will not address those issues as they may be affected by the ALJ's reconsideration on remand. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand."); *N.M. by & through Melrose v. Berryhill*, No. CIV-17-1073-BMJ, 2018 WL 3579481, at *3 (W.D. Okla. July 24, 2018) ("Plaintiff also asserts the ALJ did not properly analyze whether Plaintiff functionally met a Listing. The Court

does not address this argument because the ALJ's analysis may be affected on remand after the ALJ properly considers the evidence.") (citations omitted).

## II.   Dr. Seiler

### A.   Standards

For claims filed on or after March 27, 2017—as is the case here because Plaintiff filed her application in 2020—the ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions or prior administrative medical findings, including those from a claimant's own medical sources. § 404.1520c.

An ALJ must "give consideration to all the medical opinions in the record," *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012), and articulate how persuasive she finds each medical source's opinion. § 404.1520c. The persuasiveness of a medical source's opinion is evaluated using five factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant, which includes the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the treatment relationship is an examining relationship; (4) the medical source's area of specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. § 404.1520c(c).

The regulations instruct that supportability and consistency "are the most important factors," and must be addressed. § 404.1520c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.") The ALJ "may, but [is] not required to," explain how he or she considered the other factors. *Id.*

The supportability factor considers whether the medical source's opinion is supported by "objective medical evidence" and "supporting explanations;" "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion, the more persuasive the medical opinion will be." § 404.1520c(c)(1) (cleaned up). The consistency factor compares the medical source's opinion and "the evidence from other medical sources and nonmedical sources" in the record. § 404.1520c(c)(2). "The more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion will be." *Id.* (cleaned up).

Social Security regulations do not "prescribe the depth at which the ALJ must discuss" supportability and consistency. *Harp v. Kijakazi*, No. CV 1:21-0275 KRS, 2022 WL 2341740, at *6 (D.N.M. June 29, 2022). At a minimum, though, the ALJ must "provide an explanation that allows the reviewing court to follow [her] reasoning and communicates how [s]he considered the factors of consistency and supportability for each medical source's opinions." *Zambrano v. Kijakazi*, No. CV 1:20-1356 KRS, 2022 WL 1746765, at *5 (D.N.M. May 31, 2022). And so long as the court can "trace the path of the adjudicator's reasoning," the ALJ has met the articulation requirements. *Nielsen v. Comm'r, SSA*, No. 21-4136, 2022 WL 15570650, at *5 (10th Cir. Oct. 28, 2022)[6] (quoting *Revisions to Rules Regarding the Evaluation of Medical*

---

[6] While an unpublished opinion, this court sees no reason to disagree with the analysis in this case and finds it persuasive. The court can rely on an unpublished Tenth Circuit opinion to the extent that its reasoned analysis is persuasive in the case before it. *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005) ("In this circuit, unpublished orders are not binding precedent and we have generally determined that citation to unpublished opinions is not favored.

*Evidence*, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017)).

### B.     Analysis

Dr. Seiler opined that Plaintiff has a permanent restriction of lifting no more than five pounds with her left arm after her recent elbow replacement surgery. AR: 88. The ALJ was not persuaded by this opinion, reasoning that Dr. Seiler did not provide any explanation to support his prescribed restriction. AR: 88. Additionally, the ALJ observed that Dr. Seiler's notes show that Plaintiff no longer has pain in her left arm and that her arm remains functional even though she has some reduced range of motion. AR: 88. Finally, the ALJ noted that Plaintiff received a lifting restriction only after her elbow surgery in September 2021, which was approximately two years after the date Plaintiff was last insured. AR: 88. The ALJ posited that this temporal gap meant that Dr. Seiler's opinions had "little bearing" on whether Plaintiff was disabled during the period relevant to her claim—April 20, 2018, through September 30, 2019. AR: 88.

Plaintiff suggests that the ALJ erred in several ways. First, she faults the ALJ for failing to consider the purpose of Dr. Seiler's treatment of Plaintiff as well as his area of specialization. Brief at 17. Both the purpose of a provider's treatment and his area of specialization are factors that an ALJ "must consider . . . but is not required to explicitly discuss." *Nielsen*, 2022 WL 15570650, at *2 (citing § 404.1520c(b)(2), (3)). Thus, the court detects no discernable error in the ALJ's failure to specifically address these factors.

Plaintiff also takes issue with the ALJ's reasoning that Dr. Seiler's opinions were not

---

However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.") (cleaned up); *see also* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

persuasive because they came several years after Plaintiff's last insured date. Plaintiff has not persuaded the court that the ALJ's logic—i.e., that opinions regarding a claimant's functional capacity at a time outside the relevant period—is without merit. It is the case, as Plaintiff points out, that "evidence bearing upon an applicant's condition subsequent to the date upon which the earning requirement was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date." Brief at 18 (quoting *Baca v. Dep't of Health & Hum. Servs.*, 5 F.3d 476, 479 (10th Cir. 1993) (internal quotation marks omitted)). Yet, the ALJ seemed to concede that Dr. Seiler's opinions were at least somewhat relevant by addressing his opinions and stating that they had "little"—as opposed to no—bearing on whether Plaintiff was disabled during the relevant period.[7] Relevance aside, Plaintiff has not explained why it was improper for the ALJ to assign less weight to Dr. Seiler's opinions because they concerned Plaintiff's functional capacity in September 2021, which was approximately two years removed from the last date relevant to the ALJ's review.

      Moreover, the timing of Dr. Seiler's opinion was not the only reason the ALJ found Dr. Seiler's opinions unpersuasive. The ALJ also pointed to Dr. Seiler's examination notes showing relatively normal findings as another reason for discounting his opinions. Whether another factfinder or the court itself could have reached a different conclusion than the ALJ is not pertinent. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001) ("[W]e may neither reweigh the evidence nor substitute our judgment for the [Commissioner's].") (cleaned up), *as amended*

---

[7] Moreover, it was Plaintiff's burden to establish that she was disabled during the relevant period. *See Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) ("[Plaintiff's] date last insured was December 31, 2002; thus she had the burden of proving that she was totally disabled on that date or before.") (citation omitted).

*on denial of reh'g* (Apr. 5, 2002); *Teresa V. N. v. Saul*, 421 F. Supp. 3d 1179, 1181 (N.D. Okla. 2019) ("Even if the Court might have reached a different conclusion, the Commissioner's decision stands so long as it is supported by substantial evidence.") (citing *White*, 287 F.3d at 908). Having carefully reviewed the ALJ's decision, the court concludes that there is substantial evidence supporting the ALJ's determination that Dr. Seiler's opinions were not persuasive.

### III. Standing and Walking

Because it is necessary to remand this case for the ALJ to reconsider Plaintiff's claim while taking into account Plaintiff's migraines, the court will not address Plaintiff's argument that the ALJ lacks substantial evidence for her finding that Plaintiff could stand or walk for six hours out of an eight-hour workday. It is at least conceivable that Plaintiff's migraines could affect her ability to stand or walk for periods at a time—an issue upon which the court expresses no opinion—and so it is appropriate to allow the ALJ to reevaluate Plaintiff's RFC, including her ability to stand or walk, on remand.

### IV. Plaintiff's Credibility

In light of the need to remand, the court also concludes it is not proper to take up Plaintiff's final argument that the ALJ erred by failing to credit her statements. *See Delfrate v. Berryhill*, No. 6:16-cv-01235-JTM, 2017 WL 840961, at *3 (D. Kan. Mar. 3, 2017) ("Because the court finds that a remand is required . . ., the court need not address plaintiff's additional argument concerning evaluation of plaintiff's credibility. The ALJ will have to reassess plaintiff's credibility in light of the additional findings made upon remand."); *see also Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) (noting "credibility and RFC determinations are inherently

intertwined").

## CONCLUSION

Accordingly, the court respectfully **REVERSES** the Commissioner's decision denying L.C.'s application **REMANDS** for further proceedings consistent with this Memorandum Opinion and Order.

DATED: March 25, 2025                BY THE COURT:

_____
Susan Prose
United States Magistrate Judge